Dennis ELLIS, Plaintiff,

v.

**HANSON NATURAL RESOURCES COMPANY, a Delaware General Partnership, and The United States of America, Defendants.**

Civ. No. 92–1203–AS.

United States District Court, D. Oregon.

June 24, 1994.

Joseph A. Di Bartolomeo, Hayes Patrick Lavis, Patrick Lavis, P.C., Astoria, OR, for plaintiff.

Christopher W. Angius, Cynthia A. Canfield, Perkins Coie, Portland, OR, for defendant Hanson Natural Resources Co.

Kristine Olson Rogers, U.S. Atty., Herbert C. Sundby, Asst. U.S. Atty., Portland, OR, for defendant U.S.

## OPINION

FRYE, District Judge:

The matter before the court is the objections of defendant Hanson Natural Resources Company to the Findings and Recommendation of the Honorable Donald C. Ashmanskas, United States Magistrate Judge, filed on April 6, 1994. The matter is before this court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b).

## BACKGROUND

The matters before the court are (1) the motion of the defendant Hanson Natural Resources Company (Hanson Natural Resources) for summary judgment (# 36); and

(2) the motion of the defendant United States of America (the United States) for summary judgment (# 57).

## FACTS

Hanson Natural Resources owns approximately 170,000 acres of forest land in Clatsop County, Oregon. The land is commercially logged; however, Hanson Natural Resources allows the National Guard to use 8,570 acres of the land for training exercises in exchange for the agreement of the National Guard to maintain the land, including the roads and gates.

The land is adjacent to Perkins Road, which is a public road. The land is bisected by a private road which originates at Perkins Road and leads to a timber sorting yard. Both the private road and Perkins Road are gravelled roads and are graded for use by motor vehicles. There is a cable gate located on the private road approximately 200 feet from Perkins Road.

In April, 1991, personnel from the National Guard saw some trespassers remove the marker board from the cable gate. Personnel from the National Guard reported the vandalism of the trespassers to superior officers at that time.

The cable gate was designed by Hanson Natural Resources and was installed by the National Guard. The cable gate is composed of two concrete-filled steel pipes located on either side of the private road. A cable is attached to one of the pipes and runs through a crank box which is attached to the other pipe. The cable gate is opened by turning the crank box, thereby lowering the cable to the roadbed. A marker board hangs from the cable gate.

On July 13, 1991, the plaintiff, Dennis Ellis, was "trail riding" on his motorcycle on Perkins Road. He turned off Perkins Road and onto the private road. He did not notice any "No Trespassing" signs on either Perkins Road or the private road. The marker board that generally hangs from the cable gate had been removed. Ellis also did not notice the cable gate until he was five feet away from it. Ellis collided with the cable gate and suffered injuries requiring his hospitalization.

Ellis filed this action against the National Guard, the tenant of the land and the entity responsible for maintaining the land, alleging that the National Guard was negligent in failing to maintain the land and the cable gate or in failing to provide warnings to users of the private road of the existence of the cable gate. Ellis has also alleged a claim of negligence against Hanson Natural Resources as the owner of the land based on similar allegations.

## APPLICABLE STANDARD

■ Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact.

Once the initial burden of the moving party is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The non-moving party must make a sufficient showing on all essential elements of the case with respect to which the non-moving party has the burden of proof. *Id.*

■ The decision faced by the court is essentially the same decision faced by a court on a motion for a directed verdict—that is, whether the evidence on the motion for summary judgment presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). If reasonable minds could differ as to the conclusions drawn from the evidence in the record, the motion for summary judgment should be denied. *Id.*

1. *Motion of Hanson Natural Resources for Summary Judgment*

Hanson Natural Resources argues that it is immune from liability unless Ellis is able

to establish a "willful, wanton and reckless failure ... to guard or warn against ... a known dangerous activity on the land" under the Public Recreational Use of Private Lands Act. O.R.S. 105.675(1).

■ Ellis argues that the Public Recreational Use of Private Lands Act does not apply to the facts in this case because the land was not open to the public; the land was not subject to O.R.S. 105.675, and Ellis was not using the land "for any recreational purpose" when he was on the land. O.R.S. 105.675(2).

## ANALYSIS AND RULING

O.R.S. 105.665 provides that:

Except as otherwise provided in ORS 105.675:

(1) An owner of land owes no duty of care to keep the land safe for entry or use by others for any recreational purpose or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering thereon for any such purpose.

(2) An owner of land who either directly or indirectly invites or permits any person to use the land for any recreational purpose without charge does not thereby:

(a) Extend any assurance that the land is safe for any purpose;

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or

(c) Assume responsibility for or incur liability for any injury, death or loss to any person or property caused by an act or omission of that person.

The exceptions set forth in O.R.S. 105.675 provide, in relevant part, that:

Nothing in ORS 105.655 to 105.680 limits in any way any liability of an owner of land:

(1) For the willful, wanton and reckless failure of an owner of land to guard or warn against a known dangerous structure or other improvement or a known dangerous activity on the land....

In *Gallo v. Yamaha Motor Corp.*, 363 Pa.Super. 308, 526 A.2d 359 (1987), the court construed Pennsylvania's Recreational Use of Land and Water Act, 68 P.S. § 477–1 *et seq.* (the "Pennsylvania Act") to immunize landowners from liability when the landowner does not directly or indirectly invite or permit recreational activity on his or her land. In *Gallo*, the plaintiff was injured when her snowmobile collided with an automobile on a private road in a residential resort area. Defendant Lake Harmony, the owner of the road, argued that it was entitled to immunity under the Pennsylvania Act. The plaintiff argued that defendant Lake Harmony was not entitled to protection because it had not donated the land to the public.

Construing a statute substantially the same as O.R.S. 105.655 to 105.680, the Pennsylvania court held that the only way to give effect to the entire statute was to construe Section 3 and Section 4 of the Pennsylvania Act as two separate grants of immunity. The Pennsylvania court stated that:

By its terms, Section 3 grants immunity to the "owner of land" without reference to whether the owner "invites or permits" others onto his or her property. Section 4 extends the same immunity to the owner who does somehow invite or permit recreational activity. Unlike Section 3, however, it [Section 4] further provides that those owners who "invite or permit" recreation do not thereby assure the safety of their premises or confer "the legal status of an invitee or licensee" upon persons using the premises. The need for this further grant of immunity arises from the complexity of landowner liability in our common law. A landowner traditionally has greater responsibility to persons whom the owner invites or permits onto the land than to mere trespassers.

*Gallo*, 363 Pa.Super. at 316, 526 A.2d 359. The Pennsylvania court then found that Section 3 granted immunity to landowners who, like the defendants here, have closed their land to the public "when the following three conditions coalesce: (1) the landowner did not wilfully or maliciously fail 'to guard or warn against a dangerous condition, use, structure or activity' on the land; (2) the landowner did not charge the plaintiff for the recreational use of the land; and (3) the

injured plaintiff entered the land for recreational purposes." *Id.* at 317, 526 A.2d 359 (citations omitted).

This court agrees with the reasoning of the Pennsylvania court in *Gallo.* There is no requirement in O.R.S. 105.655(1) that a landowner open its land to the public in order to enjoy the benefits of O.R.S. 105.655(1). O.R.S. 105.655(2) only applies to those circumstances where the land is directly or indirectly held open to the public. However, there is no language in O.R.S. 105.655(1) which limits its application to those occasions where the land is held open to the public.

This court concludes that Hanson Natural Resources is immune from liability unless Ellis pleads and proves a "willful, wanton and reckless failure [on the part of Hanson Natural Resources] to guard or warn against … a known dangerous activity on the land" under the Public Recreational Use of Private Lands Act. O.R.S. 105.675(1).

A wanton act is one done in reckless disregard of the safety of others. The facts must be sufficient to demonstrate that Hanson Natural Resources had knowledge of and ignored a risk which would lead a reasonable person to realize that its conduct not only creates an unreasonable risk of harm to others but also involves a high degree of probability that substantial harm will result. *Falls v. Mortensen,* 207 Or. 130, 135, 295 P.2d 182 (1956).

Actual knowledge of the danger cannot be imputed to Hanson Natural Resources under O.R.S. 105.675(1). The evidence in this record must be sufficient to create an issue of fact for the trier of fact to determine whether Hanson Natural Resources had actual knowledge of the danger which caused the injuries to Ellis.

The facts taken in the light most favorable to Ellis are that on April 6, 1991, the marker board attached to the cable gate was removed by trespassers who appeared intoxicated. Personnel from the National Guard had observed this act of vandalism, and on April 11, 1991, Guardsman Thomas J. Wenner wrote to Bob Teagle, an employee of Hanson Natural Resources, describing the incident and stating, in part, that "Sergeant Ruff–Nelson also state (sic) that one of the two individuals broke or removed the reflective wooden sign from the cable gate leading into the logging road off Perkins Road." Pl. Ex. 20–2.

Wenner testified in his deposition that after the incident on April 6, 1991, the sign was put back on the cable gate by Guard personnel; that he went to inspect the cable gate after the sign was put back on it; and that the sign was secured in the proper manner. Another Guard personnel, Donald Rolph, testified in his deposition that the marker had been replaced on the cable gate after the incident on April 6, 1991.

There is no evidence in this record that Hanson Natural Resources knew of and ignored an unreasonable risk involving a high probability that substantial harm would result. Hanson Natural Resources received a report that the marker board that generally hangs from the cable gate had been removed in early April, 1991. Hanson Natural Resources thereafter reasonably relied upon the efforts of the National Guard to replace the marker board. There is evidence that the marker board was replaced.

Considering the undisputed evidence in a light most favorable to Ellis, the court finds that a finder of fact could not conclude that the actions of Hanson Natural Resources amount to the willful, wanton and reckless failure to guard or to warn against a known danger.

## 2. *Motion of the United States for Summary Judgment*

In his Findings and Recommendation filed on April 6, 1994, Magistrate Judge Ashmanskas concluded that the court lacks subject matter jurisdiction over claims filed against the National Guard and recommended that these claims be dismissed. The matter is before this court. *See* 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). Objections were filed to this portion of the Findings and Recommendation. The court reviews *de novo.*

28 U.S.C. § 2675(a) provides, in pertinent part:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

The United States Court of Appeals for the Ninth Circuit has consistently held that this requirement is jurisdictional in nature, must be strictly adhered to, and may not be waived. *Jerves v. United States,* 966 F.2d 517, 519 (9th Cir.1992).

The original complaint naming Hanson Natural Resources and "The Oregon Army National Guard" was filed on September 29, 1992. Ellis filed his administrative claim under the FTCA with the United States Army on October 9, 1992.

On February 3, 1993, Ellis filed a second amended complaint naming Hanson Natural Resources Company, the United States of America, and the National Guard as defendants. The United States was served with the second amended complaint on February 5, 1993.

The United States Army issued its final denial of Ellis' claim on March 5, 1993, advising Ellis that if he is "dissatisfied with the action taken on his claim, he may file suit in an appropriate United States District Court no later than six months from the date of mailing of this letter or his remedy will be forever barred." Exhibit B to Defendant USA's Statement of Facts in Support of Motion for Summary Judgment.

On April 21, 1993, Ellis filed a motion to change the caption of the case to name only Hanson Natural Resources Company and the United States of America as defendants. On May 10, 1993, this court granted the motion of Ellis to change the caption.

On January 18, 1994, this court granted the motion of Ellis to file a third amended complaint. The third amended complaint was filed on March 22, 1994.

The filing of a complaint prior to the final denial of the claim by the United States Army does not meet the jurisdictional requirements of 28 U.S.C. § 2675(a). *Jerves, supra,* 966 F.2d at 521. The issue in this case is whether Ellis has met the jurisdictional requirement that he institute a claim against the United States after the final denial of his claim by the United States Army on March 5, 1993.

Ellis contends that he instituted an action on April 21, 1993 by filing a motion to change the caption of the second amended complaint to delete the Oregon National Guard as a defendant, thereby complying with 28 U.S.C. § 2675(a). This court agrees with Magistrate Judge Ashmanskas that the motion to change the caption does not amount to the filing of an amended complaint against the Oregon National Guard and is insufficient to institute a claim against the United States for the purposes of 28 U.S.C. § 2675(a). This court lacks subject matter jurisdiction over the claims filed against the Oregon National Guard. Accordingly, these claims are dismissed.

## CONCLUSION

The motion of Hanson Natural Resources for summary judgment (# 36–1) is GRANTED; the motion of Hanson Natural Resources for partial summary judgment on the issue of punitive damages (# 36–2) is deemed MOOT; and the motion of the United States for summary judgment for lack of subject matter jurisdiction (# 57) is GRANTED.